UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

BRANDON R. BRUIN                                                                           PLAINTIFF

v.                                                          CIVIL ACTION NO. 5:16CV-P105-GNS

WARDEN RANDY WHITE et al.                                                           DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Plaintiff Brandon R. Bruin, a convicted prisoner at the Kentucky State Penitentiary (KSP), filed a *pro se* complaint (DN 1) pursuant to 42 U.S.C. § 1983. On initial screening of the complaint pursuant to 28 U.S.C. § 1915A, the Court allowed the following claims to proceed: Plaintiff's First Amendment Free Exercise and Fourteenth Amendment Due Process and Equal Protection claims arising out of the cutting of his dreadlocks and refusal to allow Plaintiff to send the cut dreadlocks home against Defendants Charles Crick, Mitchell, James Smith, Beeler, and White in their official capacities for injunctive relief and in their individual capacities for damages and injunctive relief; and Plaintiff's Eighth Amendment failure-to-protect claim against Defendants Von Dewingelo, Roberts, and Melton in their individual capacities for damages.

Following the filing of the complaint, Plaintiff filed several amended/supplemental complaints. Currently before the Court on initial screening pursuant to 28 U.S.C. § 1915A are Plaintiffs' amended/supplemental complaints contained in DNs 20, 23 & 26.

### I. SUMMARY OF CLAIMS

Neither DN 20 nor 23 was filed on a complaint form or indicated the capacity in which those persons mentioned were sued.

In DN 20, Plaintiff wants to add KSP Shift Captain John Gibbs to the action alleging that Defendant Gibbs authorized a team to cut Plaintiff's dreadlocks in violation of the First Amendment.

In DN 23, Plaintiff raises three claims: (1) that on May 31, 2016,[1] and August 1, 2016,[2] he was placed on a property and activity restriction for 24-25 hours in violation of the Eighth and Fourteenth Amendments; (2) that his meat-substitute tray for his "Vegan/Ital Diet" that he observes as a Rastafarian "contains animal by products and animal. Eggs, milk, chees, mayonaise etc." in violation of the First Amendment; and (3) that on May 31, 2016, Defendant Mitchell refused Plaintiff's request to contact his lawyer and that on a couple of occasions, his requests to contact "the Clerk of the courts via telephone" have been denied in violation of the First Amendment. Plaintiff seeks compensatory and punitive damages and declaratory and injunctive relief.

Document Number 26 was filed on a § 1983 form and contains those claims asserted in DNs 20 & 23 and additional claims. Plaintiff names the following fifteen KSP workers as Defendants in their individual and official capacities: (1) Captain John Gibbs; (2) Internal Affairs Lt. James Beavers; (3) Sergeant George Henson; (4) Sergeant H.C. Vinson; (5) APRN

---

[1] Plaintiff claims that on May 31, 2016, Defendants Mitchell, Belt, and Crick placed him on "Segregation Unit Activity or Item restriction for Shouting or Yelling verbal insults resulting in disruption of cell and/or unit area." He claims that the only items authorized were a mattress and boxers. He claims that around 4:30 pm, he asked for clothing, blanket and sheets and was denied, even though he was "suffering from Hypethemia, lips were purple and limbs had no feeling." He further claims that around 11:30 pm, he requested and was denied a blanket. Plaintiff then reports placing his mattress in front of the air conditioner and tried to fall asleep. He states that the next morning around 11:00 am, he was given his restricted items back. He reports having contracted a chest and back cold and not having running water or being able to flush his toilet during the incident.

[2] Plaintiff reports that around 9:30 am on August 1, Defendant Beeler obtained authorization from Defendant Gibbs to place Plaintiff on "Activity and Item Restriction"; that Plaintiff retained only shower shoes and a mattress. Then, on August 2, around 9:00 am, Plaintiff was given his state issued property back.

Karen Vickery; (6) Deputy Warden Skyla Grief; (7) Correctional Officer (CO) Jonathan Ruch; (8) CO Terry Griffith; (9) Deputy Warden of Security Steven Ford; (10) Unit Administrator (UA) Darmice Ellis; (11) Case Treatment Officer (CTO) Marshall Peek; (12) UA Troy Belt; (13) RN Charles "'Aaron'" Davis; (14) Lt. Jesse Jenkins; and (15) Dr. Shastine Tangilag. Plaintiff seeks monetary and punitive damages and an injunction to "cease the taking of inmates personal property as mean of punishment with procedural due process." The Court also construes the pleading as seeking injunctions ordering a "Vegan/Ital Diet" for Plaintiff and ordering treatment for Plaintiff's high blood pressure.

As Claim I, Plaintiff alleges that on April 7, 2016, when processed into KSP's Restricted Housing Unit (RHU), he informed "security and medical personnel" that he "adheres to an ital (vegan diet) due to religious beliefs as a practitioner of the Rastafarian Religious Group." He claims that he has been denied that diet by Defendants Melton, Griffith, White, and Davis[3] in violation of the Religious Land Use and Institutionalized Persons Act (RLUIPA). He also reports going on a religious fast for several days in August 2016.

As Claim II, Plaintiff asserts that the shearing of his dreadlocks also violates RLUIPA and brings this claim against Defendant White, Belt, Mitchell, Grief, Melton, Griffith, Gibbs, Beeler, Crick, and James Smith.

---

[3] Plaintiff mentions that Defendant Danial Smith responded to a grievance on the issue at the informal resolution stage. He also alleges throughout the amended/supplemental complaint that Defendant Danial Smith rejected or denied several grievances. On initial review of the complaint, the Court dismissed the claims of denied/rejected grievances brought against Defendant Grievance Coordinator Dan Smith for failure to state a claim upon which relief can be granted. *See Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006) ("Skinner's complaint regarding Wolfenbarger's denial of Skinner's grievance appeal, it is clear, fails to state a claim."); *Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004) ("Section 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance."). All claims against Defendant Danial Smith in the amended/supplemental complaints must be dismissed for the same reason.

As Claim III, Plaintiff alleges Eighth Amendment violations on two occasions. First, Plaintiff alleges that on May 31, 2016, Defendants Belt, Mitchell, James Smith, and Beeler "stripped Plaintiff of Life Necessities. ie. Blanket, Sheets, socks, t-shirt, pants, Uniform Shirt, shower shoes, running water and a working toilet. Plaintiff was forced to endure life in a cell with self a mattress and tempatures at appr'x of 55°. This occured at 10:30 a.m." Plaintiff claims that at 3:30 p.m., while "Shivering uncontrollably," he asked Defendant Henson if he could have clothing or a blanket and that Defendant Henson told him to take it up with whomever took the items. Plaintiff reports that on the following day, June 1, at or around 11:00 a.m., Defendant Smith returned Plaintiff's state-issued property to him. Plaintiff claims that he was forced to eat breakfast and lunch without washing his hands. Second, Plaintiff alleges that from June 28 until July 5, he was not afforded the opportunity to shower over a seven-day period. Plaintiff claims that Defendants Von Dwingelo and Henson denied his requests for showers during that period.

As Claim IV, Plaintiff reports that Defendants Belt, Mitchell, Beeler, Peek, Roberts,[4] and Ellis denied him access to the courts when they denied his requests to call his attorney and the Clerk of Court.

Plaintiff titles Claim V as "Deliberate Indifference and exsposure to a serious risk of harm," but he also seems to allege a retaliation claim. He alleges that on "July 28, 2016 after gaining knowledge Plaintiff was assisting and recieving legal help while on 14 Right walk, three cell house RHU as a form of reprisal of protected conduct [Defendant] Jesse Jenkins delegated Plaintiff to be moved from a lower range from which he currently resided to an upper-range to

---

[4] Plaintiff calls this Defendant "Jill Robertson," but in the complaint, he sues a "Jill Roberts." The Court presumes these are the same Defendant and will continue to use "Roberts" until further clarification and amendment by Plaintiff.

4

13 Right walk 3 cell house [] cell 15 above 14 Right Walk." Plaintiff maintains that he could still "communicate by yelling aloud to inmates on 14 walk" and that when Defendant Jenkins became aware, he said that Plaintiff was suicidal. Plaintiff maintains that because of this, he was moved back to a "lower range" and stripped of all property as authorized by Defendant Jenkins. Plaintiff claims that he was placed five cells down from an inmate with whom he had a documented conflict; thus, Defendant Jenkins placed him in "substantial risk of harm and injury." Plaintiff states that two days later on July 30, he was taken off of property restriction and denied the offer of recreation. Plaintiff reports that on August 1, he informed the psychologist of "Defendant Jenkins Machination" and that the psychologist had the inmate with whom Plaintiff had the conflict moved.

As Claim VI, Plaintiff alleges "Theft and Breach of Privleged Correspondence." He alleges an incident on July 30/August 1, 2016,[5] wherein legal mail was forcibly taken from him after a cell extraction by Defendants Beeler, Griffith, and Ruch.

In Claim VII, Plaintiff continues that after the cell extraction in Claim VI, Defendants Ruch and Griffith used excessive force in obtaining the legal mail and that Defendant Davis would not treat his injuries of bloody ankles, a bulge in the left shoulder, and "swollen and hurting" wrists.

Plaintiff titles Claim VIII as "Neglect to a Serious Medical Need."[6] He claims that after the cell-extraction incident, he was taken on August 2 to "Medical," where he was seen by Defendants Tangilag and Davis. He states that his main concerns were lower back pain and "left arm functioning" but that Defendant Tangilag "merely looked at Plaintiff, checked [his] vitals

---

[5] The exact date of the incident is unclear.
[6] The Court construes Claim VIII as being brought under the Eighth Amendment.

and prescribed ice and Ibuprofin for seven (7) days. Defendant Griffith informed Defendant Tangilag the incident was recorded and Defendant Tangilag responded: 'it does'nt look broke or fractured to me.'" Plaintiff also alleges that from April 7, 2016, to August 20, 2016, he had high blood pressure readings of "stroke level" that Defendants Davis, Vickery, and Tangilag "neglected to treat until Plaintiff Request treatment due to constant headaches, chest pain and blurred vision." He also claims that on August 20, 2016, he stated by sick-call form to Defendant Davis, "'Im on clonidine, I need to be taken off and placed on a blood pressure pill that can co-exist with psyc. recommendations.'" On August 22, Defendant Davis prescribed Lisinopril, and the next day, Defendant Vickery co-signed Defendant Davis' recommendation against Plaintiff's request to be placed on a medication that can co-exist with current medication. Plaintiff states that on both August 24 and 26, he lost consciousness after receiving clonidine and lisinopril. Plaintiff reports that lisinopril was discontinued and that his blood pressure is untreated. He claims that he continues to lose consciousness and has migraine headaches, loss of vision, and tingling in his limbs/fingers/toes.

## II. LEGAL STANDARD

Because Plaintiff is a prisoner seeking relief against governmental entities, officers, and/or employees, this Court must review the instant action under 28 U.S.C. § 1915A. *See McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). Under § 1915A, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327.

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

Although courts are to hold *pro se* pleadings "to less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519 (1972), this duty to be less stringent "does not require us to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require courts "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district

court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## III. ANALYSIS

### A. *Official-Capacity Claims for Damages Against State Employees*

"Official-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). The claims brought against the KSP Defendants in their official capacity, therefore, are deemed claims against the Commonwealth of Kentucky. *See Kentucky v. Graham*, 473 U.S. at 166. State officials sued in their official capacity for money damages are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, because Plaintiff seeks money damages from state officers or employees in their official capacity, he fails to allege cognizable claims under § 1983. Additionally, the Eleventh Amendment acts as a bar to claims for monetary damages against Defendants in their official capacity. *Kentucky v. Graham*, 473 U.S. at 169. Accordingly, Plaintiff's official-capacity claims against Defendants for damages will be dismissed for failure to state a claim upon which relief may be granted and for seeking monetary relief from Defendants who are immune from such relief.[7]

---

[7] To the extent that any of the medical personnel Defendants may not be state employees but employees of a private corporation contracted by the state to provide medical services, the official-capacity claims against those Defendants would be against the private corporation. Like a municipality, a private corporation is liable under § 1983 only when an official policy or custom of the corporation causes the alleged deprivation of federal rights. *See Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996). Because Plaintiff alleges no policy or custom that caused harm, Plaintiff fails to state a claim.

8

## B. Conditions of Confinement

The Eighth Amendment "does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). "Extreme deprivations are required to make out a conditions-of-confinement claim" under the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987). An Eighth Amendment claim has both an objective and subjective component: (1) a sufficiently grave deprivation of a basic human need; and (2) a sufficiently culpable state of mind. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). However, as former Chief Justice Rehnquist remarked, "[i]n short, nobody promised [inmates] a rose garden; and I know of nothing in the Eighth Amendment which requires that they be housed in a manner most pleasing to them . . . ." *Atiyeh v. Capps*, 449 U.S. 1312, 1315-16 (1981).

Plaintiff reports that on May 31 and August 1, he was placed on a property restriction for 24-25 hours in violation of the Eighth and Fourteenth Amendments. He also alleges that he was denied a shower for seven days.

"The circumstances, nature, and duration of a deprivation . . . must be considered in determining whether a constitutional violation has occurred." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). Here, Plaintiff's alleged denial of a shower for seven days and his alleged conditions while on property restriction for 24-25 hours in May and August 2016 were of short

9

duration and did not amount to an Eighth Amendment violation. *See, e.g.*, *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) ("With respect to Plaintiff's conditions of confinement claims – that he was deprived of a lower bunk, was subjected to a flooded cell, and was deprived of a working toilet – Plaintiff alleged only temporary inconveniences and did not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency."); *Jones v. Toombs*, No. 95-1395, 1996 WL 67750, at *1 (6th Cir. Feb. 15, 1996) (holding that as a matter of law defendants did not violate inmate's Eighth Amendment rights by depriving him of a mattress for a two-week period.); *Mills v. C.C.A.*, No. 1:10-0015, 2010 WL 5155478, at *5 (M.D. Tenn. Dec. 14, 2010) ("Even if the Court takes as true the allegations that [unsanitary] water flowed from a nearby shower into the Plaintiff's cell three times a week, that this condition occurred for a period of several weeks, and that the water was not promptly cleaned up, these facts simply do not show that he was subjected to the type of extreme deprivation necessary to implicate the Eighth Amendment."); *Glover v. Grant Cty. Det. Ctr.*, No. 10-00088-DLB, 2010 WL 2804054, at *4 (E.D. Ky. July 15, 2010) ("[T]hese short durations of cold conditions [between February 2-5, 2010 and "for 2½ days later that month"] fail to amount to a serious deprivation of the minimal civilized measure of life's necessities."); *McNatt v. Unit Manager Parker*, No. 3:99-CV-1397, 2000 WL 307000, at *4 (D. Conn. Jan. 18, 2000) (holding that no Eighth Amendment violation occurred when inmates endured stained, smelly mattresses, unclean cells, no bedding for six days, no cleaning supplies for six days, no toilet paper for one day, no toiletries or clothing for six days, no shower shoes, water that did not function properly, and smaller food portions); *Gilland v. Owens*, 718 F. Supp. 665, 685 (W.D. Tenn. 1989) ("Short term deprivations of toilet paper, towels, sheets, blankets,

mattresses, toothpaste, toothbrushes and the like do not rise to the level of a constitutional violation.").

Moreover, Plaintiff does not allege any basis for his claim that the cell was 55°, and his claim that he had purple lips and hypothermia while in a cell for one day on May 31 is not plausible. *See, e.g.*, *Payette v. Trierweiler*, No. 2:10-CV-8, 2010 WL 3937158, at *7 (W.D. Mich. Oct. 4, 2010) (denying Eighth Amendment claim where plaintiff had no basis, other than the fact that he felt cold, for claim that "it felt as if his cell was being kept between '55 and 64 degrees' from September to December").

For these reasons, Plaintiff fails to state an Eighth Amendment claim upon which relief may be granted.

Plaintiff also alleges that these conditions constituted a Fourteenth Amendment violation. "Prisoners claiming a due process violation under the Fourteenth Amendment must demonstrate that they have been deprived of a protected liberty or property interest by arbitrary governmental action." *Williams v. Bass*, 63 F.3d 483, 485 (6th Cir. 1995). While Plaintiff alleges that he was placed on a property restriction on a couple of occasions, the restriction was only temporary. To the extent he alleges deprivation of a liberty interest, "[s]uch a liberty interest can arise from the Constitution," *id.*, and "[s]tates may under certain circumstances create liberty interests which are protected by the Due Process Clause." *Sandin v. Connor*, 515 U.S. 472, 483-84 (1995). These state-created liberty interests, however, "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484

(citations omitted). A restraint, however, which "inevitably affect[s] the duration of [an inmate's] sentence" creates a liberty interest. *Id.* at 487.

Here, Plaintiff fails to allege a restraint affecting the duration of his sentence, and Plaintiff fails to show how the temporary conditions alleged imposed an atypical and significant hardship on him in relation to the ordinary incidents of prison life. Accordingly, Plaintiff has failed to demonstrate the deprivation of a protected or liberty interest that would entitle him to procedural due process protections, and his Fourteenth Amendment due process claims will be dismissed for failure to state a claim upon which relief may be granted.

### C. *Exposure to Serious Risk of Harm*

Plaintiff claims that on July 28, Defendant Jenkins moved him to a different walk; said Plaintiff was suicidal; and because of this, had Plaintiff moved again where he was stripped of property and placed five cells down from an inmate which whom he had a documented conflict. Plaintiff claims, therefore, that Defendant Jenkins placed him in "substantial risk of serious harm and injury." Plaintiff, however, fails to allege any harm or injury as a result of his placement near the other inmate, and he concedes that after speaking with a psychologist on August 1, she had the inmate with whom Plaintiff had the conflict moved. Plaintiff fails to allege any injury or harm as a result of the actions of Defendant Jenkins and fails to state an Eighth Amendment claim.

### D. *Retaliation*

Related to the foregoing incident, Plaintiff claims that on "July 28, 2016 after gaining knowledge Plaintiff was assisting and recieving legal help while on 14 Right walk, three cell house RHU as a form of reprisal of protected conduct [Defendant] Jesse Jenkins delegated

12

Plaintiff to be moved from a lower range from which he currently resided to an upper-range to 13 Right walk 3 cell house [] cell 15 above 14 Right Walk." Plaintiff appears, therefore, to be alleging a retaliation claim.

Retaliation for the exercise of a constitutional right is itself a violation of the Constitution actionable under § 1983. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).

> A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Id.*

Presuming for the purposes of initial review that Plaintiff was engaged in protected conduct when "assisting and recieving legal help," the Court finds that Plaintiff fails to show that an adverse action was taken against him when Defendant Jenkins moved him to a different walk.[8] Thus, any retaliation claim will be dismissed.

### E. Access to Courts

Plaintiff claims that on May 31, Defendant Mitchell refused Plaintiff's request to use the telephone to contact his lawyer and that on a couple of occasions, his requests to contact "the Clerk of the courts via telephone" have been denied in violation of the First Amendment.

To state a claim for a denial of access to the courts, a prisoner must demonstrate actual prejudice to pending litigation that challenges his conviction or conditions of confinement. *Lewis v. Casey*, 518 U.S. 343, 355 (1996); *Thaddeus-X v. Blatter*, 175 F.3d at 391 ("Thus, a

---

[8] Plaintiff next indicates that because he "could still communicate by yelling aloud to inmates on 14 Walk," Defendant Jenkins said Plaintiff was suicidal requiring him to be moved and stripped of property. It is unclear whether Plaintiff is attempting to state a retaliation claim here. Nevertheless, the Court does not find Plaintiff's "yelling aloud" to be protected conduct.

13

prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only."). That is, there must be an actual injury, and no actual injury occurs without a showing that such a claim "has been lost or rejected, or that the presentation of such a claim is currently being prevented." *Id.* at 356; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (stating that an inmate must show, "for example, that the inadequacy of the prison law library or the available legal assistance caused such actual injury as the late filing of a court document or the dismissal of an otherwise meritorious claim"). In addition, "only prisoners with non-frivolous underlying claims can have standing to litigate an access-to-courts action." *Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (quoting *Lewis v. Casey*, 518 U.S. at 353). "[T]he underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

Plaintiff has not alleged any actual injury as a result of not being able to contact either his lawyer or the Clerk of Court by telephone. Therefore, he fails to state a denial-of-access-to-courts claim.

To the extent Plaintiff is also alleging that he was denied access to courts when a piece of privileged mail was extracted from his boxers during the July 30/August 1 incident, Plaintiff again fails to state a claim because he fails to allege any actual injury.

*F.  Denial of Privileged Mail*

Regarding Plaintiff's allegation that a piece of privileged mail was taken from him which it was extracted from his boxers, Plaintiff does not allege routine opening or interference with his mail and, therefore, fails to state a claim of constitutional proportions.  *See, e.g.*, *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) ("While a prisoner has a right to be present when his legal mail is opened, an isolated incident of mail tampering is usually insufficient to establish a constitutional violation.  Rather, the inmate must show that prison officials 'regularly and unjustifiably interfered with the incoming legal mail.'") (citation omitted); *Okoro v. Scibana*, 63 F. App'x 182, 184 (6th Cir. 2003) ("Such a random and isolated incident [of mail interference] is insufficient to establish a constitutional violation."); *Rinehart v. Beck*, No. 5:09-CT-3019-D, 2011 WL 52360, at *5 (E.D.N.C. Jan. 5, 2011) ("Isolated incidents of mail mishandling do not rise to the level of a constitutional violation."); *Lloyd v. Herrington*, No. 4:11CV-P128-M, 2001 WL 6026661, at *2 (W.D. Ky. Dec. 2, 2011) ("Even if the Court interprets Plaintiff's complaint as alleging two instances of interference with his mail-one of the outgoing motion and one of his incoming piece of legal mail-the Court still finds that the two incidences taken together do not rise to a constitutional violation."); *Pearson v. Simms*, 345 F. Supp. 2d 515, 519 (D. Md. 2003) ("[O]ccasional incidents of delay or non-delivery of mail do not rise to a constitutional level.").

*G.  Denial of Medical Treatment Following Excessive-Force Incident*

In the context of a § 1983 claim for inadequate medical care, prison personnel violate a prisoner's civil rights if they are deliberately indifferent to the prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976).  However, not every claim of inadequate medical

treatment states an Eighth Amendment violation. *Id.* at 105. The indifference must be substantial; that is, it must be an offense to evolving standards of decency. *Id.* at 106.

Plaintiff claims that after the July 30/August 1, cell-extraction incident, Defendant Davis would not treat his injuries and that on August 2, Defendants Tangilag and Davis would not treat his lower back pain and left arm. Plaintiff admits, however, that he was taken to "Medical" after the incident; that he was examined by Defendant Dr. Tangilag; that Defendant Dr. Tangilag prescribed ice and ibuprofen and that she opined that his back/arm did not look to be broken or fractured. Plaintiff, therefore, received treatment but apparently not the treatment he desired. A patient's disagreement with his physician over the proper medical treatment alleges no more than a medical malpractice claim, which is a tort actionable in state court, but is not cognizable under § 1983. *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 816 n.13 (6th Cir. 1996); *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995). Further, the question of whether diagnostic techniques or other forms of treatment are indicated is a classic example of a matter for medical judgment. *Estelle*, 429 U.S. at 107. Plaintiff also fails to allege continuing pain or problems from those injuries that would require further treatment. "Where a prisoner has received some medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (citations omitted).

For these reasons, the Eighth Amendment claim of denied medical treatment following the cell extraction will be dismissed.

## H. Remaining Claims

Upon consideration, and in addition to the claims proceeding on initial review of the complaint, the Court will allow the following claims to continue on initial review of the amended/supplemental complaints in DNs 20, 23 & 26: (1) the First Amendment free exercise and RLUIPA claims regarding denial of a "Vegan/Ital Diet" against Defendants Melton, White, Griffith, and Davis in their official capacities for injunctive relief and in their individual capacities for damages and injunctive relief; (2) the First Amendment free exercise claim regarding the cutting of dreadlocks against Defendant Gibbs in his official capacity for injunctive relief and in his individual capacity for damages and injunctive relief and the RLUIPA claim regarding the cutting of dreadlocks against Defendants Crick, Mitchell, James Smith, Beeler, White, Belt, Grief, Melton, Griffith, and Gibbs in their official capacities for injunctive relief and in their individual capacities for damages and injunctive relief; (3) the Eighth Amendment excessive-force claims regarding the July 30/August 1 cell extraction against Defendants Ruch and Griffith in their individual capacities for damages; and (4) the Eighth Amendment claim of deliberate indifference to serious medical needs regarding Plaintiff's claims of untreated high blood pressure, migraine headaches, loss of vision, tingling in limbs/fingers/toes, and episodes of loss of consciousness against Defendants Davis, Vickery, and Tangilag in their individual capacities for damages and injunctive relief.

## IV. ORDER

**The Clerk of Court is DIRECTED to add** the following persons as Defendants in the docket sheet: John Gibbs, James Beavers, George Henson, H.C. Vinson, APRN Karen Vickery, Skyla Grief, Jonathan Ruch, Terry Griffith, Steven Ford, Darmice Ellis, Marshall Peek, Troy Belt, RN Charles Aaron Davis, Jesse Jenkins, and Dr. Shastine Tangilag.

**IT IS ORDERED that the following claims shall proceed** on initial review of the amended/supplemental complaints in DNs 20, 23 & 26: (1) the First Amendment free exercise and RLUIPA claims regarding denial of a "Vegan/Ital Diet" against Defendants Melton, White, Griffith, and Davis in their official capacities for injunctive relief and in their individual capacities for damages and injunctive relief; (2) the First Amendment free exercise claim regarding the cutting of dreadlocks against Defendant Gibbs in his official capacity for injunctive relief and in his individual capacity for damages and injunctive relief and the RLUIPA claim regarding the cutting of dreadlocks against Defendants Charles Crick, Mitchell, James Smith, Beeler, White, Belt, Grief, Melton, Griffith, and Gibbs in their official capacities for injunctive relief and in their individual capacities for damages and injunctive relief; (3) the Eighth Amendment excessive-force claims regarding July 30/August 1 cell extraction against Defendants Ruch and Griffith in their individual capacities for damages; and (4) the Eighth Amendment deliberate indifference to a serious medical need claim regarding Plaintiff's claims of untreated high blood pressure, migraine headaches, loss of vision, tingling in limbs/fingers/toes, and episodes of loss of consciousness against Defendants Davis, Vickery, and Tangilag in their individual capacities for damages and injunctive relief.

In permitting these claims to proceed, the Court passes no judgment on the merits and ultimate outcome of the action.  The Court will perform an initial screening on the other amended/supplemental complaints by separate Memorandum Opinions and Orders and, thereafter, will enter a separate Order directing service on Defendants and governing the development of all continuing claims.

**IT IS FURTHER ORDERED** that **all other claims are DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted and/or pursuant to § 1915A(b)(2) for seeking monetary relief from Defendants immune from such relief.

As all claims against the following Defendants are dismissed, the **Clerk of Court is DIRECTED to terminate** them from this action:  James Beavers, George Henson, H.C. Vinson, Steven Ford, Darmice Ellis, Marshall Peek, and Jesse Jenkins.

Date:  September 27, 2017

**Greg N. Stivers, Judge**
**United States District Court**

cc:     Plaintiff, *pro se*
        Defendants
        Counsel of Record
4416.005