**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:16-cv-00105-TBR**

BRANDON R. BRUIN                                                            PLAINTIFF

v.

WARDEN RANDY WHITE *et al.*                                   DEFENDANTS

**MEMORANDUM OPINION & ORDER**

This matter comes before the Court upon Defendants Karen (Vickery) Ramey, Kelly Neely, Nancy Raines, Charles Davis, and Bruce Bauer's (collectively, "Defendants") Motion for Summary Judgment. [DN 145.] *Pro se* Plaintiff Brandon Bruin ("Bruin") has responded. [DN 151.] Defendants have replied. [DN 152.] As such, this matter is ripe for adjudication. For the reasons that follow, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [DN 145] is **GRANTED**.

## I. Background

Bruin is a convicted prisoner currently incarcerated at Eastern Kentucky Correctional Complex. His claims in this action, however, concern his incarceration at the Kentucky State Penitentiary ("KSP"). Bruin filed a series of complaints, supplemental complaints, and amendments to complaints whereby he raises numerous claims against more than forty defendants. Several of these defendants have been terminated from the action. His claims generally arise from seven separate events: (1) the cutting of his dreadlocks; (2) being assaulted by another inmate; (3) the denial of a "Vegan/Ital" diet; (4) excessive force during a cell extraction; (5) allegedly deficient medical care regarding high blood pressure, headaches, and numbness; (6) claims arising from

Plaintiff's fasting and hunger strike; and (7) alleged interference with Plaintiff's access to the courts and medical records.

On initial review [DN 48] of the complaint [DN 1] pursuant to § 1915A, the Court allowed the following claims to continue: (1) Bruin's First Amendment free-exercise and Fourteenth Amendment due-process and equal-protection claims arising out of the May 2016 cutting of his dreadlocks and refusal to allow Bruin to send the cut dreadlocks home against Defendants Charles Crick, Roger Mitchell, James Smith, James R. Beeler, and Randy White in their official capacities for injunctive relief and in their individual capacities for damages and injunctive relief; and (2) Bruin's Eighth Amendment failure-to-protect claim arising out of an assault by another inmate in June 2016 against Defendants Bruce Von Dewingelo, Jill Roberts, and Micah Melton in their individual capacities for damages.

On initial review [DN 97] of Bruin's first wave of amended and supplemental complaints [DNs 20, 23, & 26], the Court allowed the following claims to continue: (1) the First Amendment free-exercise and the Religious Land Use and Institutionalized Persons Act claims regarding denial of a "Vegan/Ital Diet" against Defendants Melton, White, Terry Griffith, and Charles "Aaron" Davis in their official capacities for injunctive relief and in their individual capacities for damages and injunctive relief; (2) the First Amendment free-exercise claim regarding the cutting of dreadlocks against Defendant John Gibbs in his official capacity for injunctive relief and in his individual capacity for damages and injunctive relief and the RLUIPA claim regarding the cutting of dreadlocks against Defendants Charles Crick, Mitchell, James Smith, Beeler, White, Belt, Skyla Grief, Melton, Griffith, and Gibbs in their official capacities for injunctive relief and in their individual capacities for damages and injunctive relief; (3) the Eighth Amendment excessive-force claims regarding the July 30/August 1, 2016 cell extraction against Defendants Jonathan Ruch and

Griffith in their individual capacities for damages; and (4) the Eighth Amendment claim of deliberate indifference to a serious medical need regarding Plaintiff's claims of untreated high blood pressure, migraine headaches, loss of vision, tingling in limbs/fingers/toes, and episodes of loss of consciousness against Defendants Davis, Karen Vickery, and Shastine Tangilag in their individual capacities for damages and injunctive relief.

On initial review [DN 112] of Bruin's second wave of amended and supplemental complaints [DNs 34, 54, 57, & 89] this Court allowed the following claims to continue: (1) the First Amendment free-exercise claim regarding the May 2016 cutting of dreadlocks against Defendant Duncan; (2) the various First, Eighth, and Fourteenth Amendment claims and state-law medical negligence claims arising from a "Religious Fast" Plaintiff began on December 14, 2016, which turned into a hunger strike requiring multiple cell extractions for blood work and eventual forced hydration in January 2017 against Defendants White, Ramey, Neely, Raines, Bruce Bauer, Grief, Burkett, Edmonds, Mitchell, James Smith, Michael Alexander, Inglish, Ruch, Corley, Lauren N. Hawkins, Rodriquez, Coombs, Hope, Beeler, and Von Dewingelo; and (3) the Eighth Amendment excessive-force claims against Defendants Swank and DeBoe, the Eighth Amendment failure-to-protect claim against Defendant Grief, the First Amendment free-exercise claim against Defendants Coombs and Rodriquez, and the retaliation claims against Defendants Rodriquez, Coombs, DeBoe, Swank, and Grief. The Court also dismissed the RLUIPA claim it previously allowed to proceed against Defendant Davis.

Defendants now move the Court to dismiss all claims against them and terminate them from this action.

## II. Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matshushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonable find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). The plaintiff may accomplish this by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence…of a genuine dispute…" Fed. R. Civ. P. 56(c)(1). Mere speculation will not suffice to defeat a motion for summary judgment, "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Electronic Data Sys. Corp.,* 90 F.3d 1173, 1177 (6th Cir. 1996).

### III. Discussion

**A. Exhaustion of Administrative Remedies**

The Prison Litigation Reform Act ("PLRA") bars a civil rights action challenging prison conditions until the prisoner exhausts "such administrative remedies as are available." 42 U.S.C. § 1997e(a); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion

is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). In order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules established by state law. *Jones*, 549 U.S. at 218-19. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). However, "failure to exhaust administrative remedies under the PLRA is an affirmative defense that must be established by the defendants." *Napier v. Laurel Cty. Ky.*, 636 F.3d 218, 225 (6th Cir. 2011) (citing Jones, 549 U.S. at 204).

   1. **Bruin's Eighth Amendment Claim Against Defendants Ramey and Davis Regarding Untreated High Blood Pressure**

Bruin claims from April 7, 2016 to August 20, 2016 he had high blood pressure readings and Defendants Davis and Ramey failed to treat him. [DN 26-2 at PageID 232.] Bruin initially filed this action on July 5, 2016. [DN 1.] On September 8, 2016, Bruin filed a grievance stating he was improperly prescribed lisinopril and clonidine to take simultaneously and his blood pressure bottomed out as a result. [DN 145-2 at PageID 1257.] Bruin appealed the informal resolution to the Health Care Grievance Committee on October 12, 2016. [*Id.* at PageID 1274.] However, he filed this claim against Defendants Davis and Ramey in his supplemental complaint on October 4, 2016. [DN 26.] On October 11, 2016, the Heath Care Grievance Committee concurred with the informal resolution. [DN 145-2 at PageID 1275.] Bruin then appealed the Health Care Grievance Committee's findings to the Medical Director. On October 17, 2016, the Medical Director concurred with the decision of the Health Care Grievance Committee. [DN 145-2 at PageID 1275.] Defendants claim Bruin did not fully exhaust his administrative remedies prior to bringing this claim. Bruin does not dispute this fact but does argue he was not required to fully exhaust due to noncompliance by KSP.

5

Corrections Policy & Procedure ("CPP") requires a medical authority to respond to a grievance within fifteen business days after receipt of the grievance at the informal resolution stage. [DN 145-3 at PageID 1389.] Bruin submitted his grievance on September 8, 2016 and did not receive a response until September 28, 2016. Defendants do not deny Bruin received resolution outside of the fifteen-day requirement. However, they rely on two provisions that state:

1. "If the health care staff member responsible for the informal resolution of health care grievances at an institution receives more than ten (10) grievances and they are due within two weeks of each other, then the Grievance Coordinator may call a moratorium on the time limits for those grievances."

4. "If a moratorium on time limits is called, the affected grievances shall be processed within a reasonable time given the other duties of the health care staff and the affected grievants shall be notified in writing."

[*Id.* at PageID 1391.] Defendants do not present any evidence that a moratorium was called by the Grievance Coordinator or that the individual responsible for the informal resolution received more than ten grievances due within two weeks of each other. "[A]dministrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance." *Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 996 (6th Cir. 2004). When Bruin filed his amended complaint, October 4, 2016, a response to his grievance had been filed but was untimely. Although Bruin continued with the grievance process after filing suit, at the moment of filing, he had exhausted his administrative remedies. Without evidence that a moratorium was entered or there were more than ten grievances filed, Defendants have not met their burden.

**2. Eighth Amendment Claim Against Defendant Raines Regarding Pepper Spray**

Defendant Raines next argues Bruin did not file a grievance on this issue. Bruin states he attempted to give his grievance to another Prisoner to mail to the Grievance Coordinator, but that inmate was disciplined. On December 28, 2016, an officer stopped at inmate Garfield Evans' cell "to collect the mail that was sticking out of his door." [DN 151-1 at PageID 1589.] The mail

6

contained three letters addressed to the grievance committee and one outside letter. [*Id.*] Grievances that are addressed to the Grievance Committee are appeals of previously filed grievances. [DN 145-2 at PageID 1065.] The form to file an initial grievance differs substantially from the appellate form. [*Id.* at PageID 1064.] Although Bruin states he attempted to file a grievance regarding this issue, the evidence shows otherwise. Therefore, without evidence that Bruin was prevented from filing a grievance, his failure to file a grievance on this issue warrants dismissal of the claim. Bruin was on a grievance restriction during this time. However, he was allowed to file a grievance every ten business days during this time. [*See* DN 151-1 at PageID 1588.]

### 3. Eighth Amendment Claim Against Defendants Neely and Raines Regarding Withholding Special Diet

Defendants argue Bruin failed to exhaust administrative remedies prior to asserting this claim. On December 15, 2016, Bruin filed a grievance concerning his request for a dairy free diet. [DN 145-2 at PageID 1185.] On December 19, 2016, Dan Smith found Bruin was "not sincere" in requesting a non-dairy diet and there was no evidence to support Bruin's request. [*Id.* at PageID 1185-1186.] On March 7, 2017, the Warden received the grievance and after a review, sent the grievance back to be processed as a medical grievance. [*Id.* at PageID 1199.]

On March 15, 2017, Defendant Raines found Bruin was not entitled to a dairy free diet at the informal resolution stage. [*Id.* at PageID 1187.] Bruin appealed the informal resolution to the Health Care Grievance Committee on March 22, 2017. [*Id.* at PageID 1201.] The Committee concurred with the informal resolution. [*Id.* at PageID 1202.] Bruin appealed the Committee's decision to the Medical Director and the Director stated allergy testing was requested for Bruin. [*Id.* at PageID 1204.]

Bruin filed a supplemental complaint alleging these facts on February 13, 2017. [DN 57-1.] This is clearly before he had fully exhausted his administrative remedies. Therefore, Bruin did not properly exhaust his administrative remedies prior to bringing this claim and this claim is barred.

### 4. Eighth Amendment Claim Against Defendants Neely, Ramey, and Bauer Regarding Forced Hydration

Bruin claims he received forced hydration on January 25 and 26. Bruin filed his supplemental claim on this issue on February 13, 2017. [*Id.* at PageID 491-497.] However, he did not file a grievance regarding this issue until February 15, 2017. [DN 145-2 at PageID 1177.] Bruin argues the fact that he was on a grievance restriction and filed a grievance on January 24, 2017 excuses this fact. Defendants cite to *McDougald v. Esham,* to support their position.

In *McDougald,* McDougald was placed on a grievance restriction. 2018 WL 1010214, *5 (S.D. Ohio Feb 21, 2018). The Court found McDougald failed to exhaust his remedies despite this restriction. *Id.* at 7. The Southern Ohio Correctional Facility had a policy that an inmate on grievance restriction had "unlimited access to the kite system to communicate with administrative personnel and also could have contacted corrections officers to obtain a grievance form and address medical concerns through the inmate grievance procedure." *Id.* Here, Defendants have not pointed to any policy that allows for grievances to be made while on grievance restriction. In the cases Defendants cite to, each institution pointed to a policy allowing for an inmate on a grievance restriction to seek review. *See Thompson v. Zwikler,* 2013 WL 5538882, *5 (W.D. Mich. Oct. 8, 2013). Without more evidence, Defendants have not met their burden.

### B. Eighth Amendment Claims

Defendants are entitled to summary judgment on the merits of Bruin's claims. It is well established that "[t]he Eighth Amendment forbids prison officials from unnecessarily and

8

wantonly inflicting pain on an inmate by acting with deliberate indifference toward [his] serious medical needs." *Jones v. Muskegon Cty.*, 625 F.3d 935, 941 (6th Cir. 2010) (internal quotations and citations omitted). A claim for deliberate indifference "has both objective and subjective components." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011). The objective component mandates a sufficiently serious medical need. *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir. 2004). The subjective component regards prison officials' state of mind. *Id.* The prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 896 (internal quotation marks and citation omitted). "[A] plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment." *Johnson v. Karnes*, 398 F.3d 868, 875 (6th Cir. 2005) (quoting *Comstock v. McCrary,* 273 F.3d 693, 703 (6th Cir. 2001).

The Sixth Circuit has also noted that in the context of deliberate-indifference claims:

> [W]e distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment. Where a prisoner alleges only that the medical care he received was inadequate, federal courts are generally reluctant to second guess medical judgments. However, it is possible for medical treatment to be so woefully inadequate as to amount to no treatment at all.

*Alspaugh*, 643 F.3d at 169 (internal quotations and citations omitted). "[M]edical proof is necessary to assess whether the delay caused a serious medical injury" where the injury is non-obvious. *Blackmore*, 390 F.3d at 898.

### 1. Treatment of High Blood Pressure

Bruin argues he had high blood pressure from April 7, 2016 until August 20, 2016. [DN 2602 at PageID 232.] He states Defendants Davis and Ramey neglected to treat him. [*Id.*] However, he did not respond to Defendants' argument on the merits of this claim.

9

Bruin submitted a sick call request on August 20, 2016 complaining of high blood pressure. [DN 148 at PageID 1547.] On August 20, 2016 an ECG was performed on Bruin and the results were normal. [*Id.* at PageID 1505.] The request was received on August 22, 2016 and Bruin was treated that same day by Defendant Davis. [*Id.*] Defendant Davis prescribed Bruin 5 mg of Lisinopril. [*Id.*] From April to August, Bruin submitted three other sick call requests. [*Id.* at PageID 1537, 1542, 1543.] In these requests, Bruin did not make any complaint of issues with his blood pressure.

Defendants cite to *Powell v. Humphrey* to support their position. In *Powell,* Powell argued Defendants denied him pain and high blood pressure medication. 2017 WL 3302664 *1 (W.D. Ky. Aug. 2, 2017.). Defendants provided records that they did in fact treat Powell for his pain and high blood pressure. *Id.* at 2. The Court granted summary judgment because the record contradicted Powell's claims. *Id.*

Here, it is clear that Bruin did receive prompt treatment for his high blood pressure after his request. The same day he made the complaint, an ECG was performed, and he was seen in person by Defendant Davis two days later for this complaint.

At the informal resolution stage of the grievance process regarding this issue, it was noted that there was a medication error regarding his high blood pressure. [DN 145-2 at PageID 1258.] However, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (quoting *Estelle v. Gamble,* 429 U.S. 97, 105-106 (1976)).

Here, Bruin has not provided any evidence that Defendants unnecessarily and wantonly caused him pain or suffering. Bruin's bare assertions are not enough. Therefore, medication error is not enough to sustain a claim of deliberate indifference.

Further, Bruin has not provided medical evidence of any detrimental effect the alleged delay in treatment caused. "[M]edical proof is necessary to assess whether the delay caused a serious medical injury" where the injury is non-obvious. *Blackmore*, 390 F.3d at 898. Therefore, this claim must be dismissed.

### 2. Claim Against Defendant Raines Regarding Pepper Spray

Defendant Raines argues she is entitled to summary judgment on this claim because no reasonable jury could conclude she was deliberately indifferent to Bruin's medical needs. Bruin does not respond to this argument.

Bruin alleged Defendant Raines poured water into his eyes to decontaminate after pepper spray was used. [DN 57-1 at PageID 481.] Bruin states the water "trickled to the back area of Plaintiff head area, re-activating the burning sensation and causing the excess residue of mace administered into Plaintiffs head to stream from its current location to the lower extremities of Plaintiff". [*Id.*] However, Bruin also stated he request the decontamination. [*Id.*]

"[T]he effects of OC spray, standing alone, fail to indicate an objective, "sufficiently serious" medical need giving rise to constitutionally-mandated medical treatment where the inmate has access to soap and water to decontaminate." *Woodard v. Winters*, 2018 WL 3020336, at *11 (S.D. Ohio June 18, 2018), report and recommendation adopted, 2018 WL 4610511 (S.D. Ohio Sept. 26, 2018). Bruin has not alleged any sufficiently serious medical need ignored or inflicted by Defendant Raines. Further, he has not alleged a "serious medical need beyond the normal

effects of OC spray." *Id.* Bruin has provided no evidence to show Defendant Raines acted wantonly or indifferently by decontaminating Bruin. Therefore, this claim must be dismissed.

### 3. Claim Against Defendants Neely and Raines Regarding Withholding Special Diet

Dr. Forte approved a diet of "6 packs of crackers, peanut butter, and a banana" for breakfast on January 28, 2017. [DN 57-3 at PageID 540.] Bruin received this meal as ordered for breakfast. [DN 57-1 at PageID 497.] Bruin states he received the same modified meal at approximately 10:10 a.m. [*Id.*] However, Defendants Neely and Raines determined Bruin did not need a special diet. Bruin alleges Defendants Neely and Raines showed a deliberate indifference to his serious medical needs by terminating his special diet with no medical justification. [*Id.* at PageID 498.] Defendants argue they are entitled to summary judgment because Bruin was not entitled to the special diet. Bruin does not respond to this argument.

"In the dietary context, the Eighth Amendment requires that prison officials provide inmates with meals that are nutritionally adequate to sustain the prisoner's health." *Blau v. Fortescue*, 2019 WL 2612932, at *4 (E.D. Mich. June 26, 2019) (citing *Cunningham v. Jones*, 567 F.2d 653, 656 (6th Cir. 1977). "Prison officials will be liable under § 1983 where they make dietary decisions on prisoners' behalf with deliberate indifference to their health and safety." *Id.*

Although Bruin alleges Defendants had no medical justification for not providing his special diet, the change in Bruin's diet was made after a review of Bruin's medical records. [DN 145-2 at PageID 1187.] Bruin's medical records revealed he had never been diagnosed as lactose intolerant nor had he previously alleged he was lactose intolerant. [*Id.* at PageID 1187,1202.] Bruin does not refute the fact that he had never previously been diagnosed or claimed to be lactose intolerant.

Further, Bruin has not provided any evidence that Defendants acted wantonly in changing his diet. Defendants Neely and Raines disagreed with Dr. Forte's order and subsequently changed Bruin's diet. This act alone is not enough to indicate deliberate indifference. "To the extent [Bruin's] allegations constitute a difference of opinion between himself and medical personnel regarding his need for a special diet, he has failed to state an Eighth Amendment claim." *Miller v. Cleek,* 198 F. 3d 246 (6th Cir. 1999). Without further evidence, this claim must be dismissed.

### 4. Claim Against Defendants Neely, Ramey, and Bauer Regarding Forced Hydration

Bruin argues Defendants Neely, Ramey, and Bauer were deliberately indifferent to his medical needs by forcefully hydrating him. Defendants argue forced hydration was only used when it became medically necessary.

Bruin engaged in a lengthy fast beginning in December 2016. Bruin had several visits with medical professionals and was consistently observed by guards. [*See generally* DN 148.] On January 23, 2017, Bruin was seen by Defendant Ramey. She noted that Bruin had missed his 90th meal but appeared to be "clinically stable." [*Id.* at PageID 1461-1462.] He was drinking orange juice and tea when offered. [*Id.* at 1462.] Bruin alleges on January 24, 2016, Defendant Neely issued a memorandum ordering Bruin's intake of tea and orange juice to be limited without medical justification. [DN 57-1 at PageID 490; DN 57-3 at PageID 528.] The memorandum Bruin provides does not list a date. Defendant Ramey suggested on January 3, 2017 that Bruin not be given tea as an option "based on urine and exam". [DN 148 at PageID 1485.] Bruin further alleges he only passed out on January 26, 2017 due to this restriction on liquids.

On January 26, 2017, Bruin passed out while walking in his cell. [DN 148 at PageID 1453.] Defendant Ramey recommended IV fluids because Bruin was showing signs of dehydration. [*Id.* at PageID 1453-1454.] Medical Director Denise Burkett agreed with Ramey's recommendation.

13

[*Id.* at PageID 1454.] Defendant Bauer placed Bruin on an IV drip. [DN 57-1 at PageID 492.] Defendant Raines then allegedly adjusted the IV drip to give a rapid drip of fluids. [*Id.* at PageID493.] In addition to Bruin arguing the act of giving him IV fluids was medically unnecessary, he argues hydration only become necessary due to the liquid restriction.

Here, it is clear Defendants Ramey, Bauer, and Raines administered the IV to treat Bruin's dehydration. There is no evidence that Defendants acted wantonly when administering the IV drip. Bruin conclusively states it was done in a malicious manner. However, the evidence proves otherwise. Medical records show Bruin passed out after engaging in a long hunger strike. [DN 148 at PageID1453.] He was showing signs of dehydration and his blood pressure was low. [*Id.*] As such, Defendant Ramey recommended an IV and Defendant Bauer administered it. Without more, Bruin has not provided evidence that these Defendants acted deliberately indifferent to his serious medical needs.

These facts also do not give rise to a constitutionally cognizable claim under the Fourteenth Amendment. In *Davis v. Agosto,* the Court adopted an Eighth Circuit Opinion rejecting a constitutional challenge to a decision by prison officials to force-feed an inmate after a hunger strike. 89 Fed. App'x. 523, 528 (6th Cir. 2004). "While '[t]he Supreme Court has held that individuals in state custody enjoy [a] protectable liberty interest[ ] ... to refuse medical treatment.' *Noble v. Schmitt*, 87 F.3d 157, 161 (6th Cir.1996), that right is not absolute and is particularly susceptible to regulation in the prison setting." *Id.* The Court further stated, "[h]ad [the officials] opted not to provide the treatment, the officials could have subjected themselves to a deliberate-indifference claim and would of course have remained responsible for providing any further medical treatment". *Id.* Here, Defendants only acted when necessary. Had they not hydrated Bruin,

they may have acted with deliberate indifference. Therefore, the claim against them must be dismissed.

Bruin argues Defendant Neely's act of limiting his orange juice and tea led to his dehydration. Bruin was not restricted from drinking all fluids. His fluid intake was limited to a drink with each meal and water every hour. [DN 57-3 at PageID 528.] Bruin's argument ignores the fact that on January 25, 2017, he stated "he was not going to drink any water that is offered to him" since his orange juice intake was limited. [DN 148 at PageID 1455.] He further stated, "they might as well have the IVs on stand-by." [*Id.*] Bruin refused to drink the offered fluids. He has not provided any evidence that the plan suggested by Defendant Neely, if followed, would have made him dehydrated. Defendants cannot be punished for Bruin's choice to limit his fluid intake completely. Therefore, this claim must also be dismissed against Defendant Neely.

### C. Bruin's State Law Claims

Bruin has also asserted state law medical negligence claims against Defendants. 18 U.S.C. § 1367(c) states in relevant part:

> "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
>
> (3) the district court has dismissed all claims over which it has original jurisdiction".

Since this Court has dismissed Bruin's federal claims, it will decline to exercise supplemental jurisdiction over his state law claims *See Wee Care Child Ctr., Inc. v. Lumpkin,* 680 F.3d 841, 849 (6th Cir. 2012); *see also Polk v. Jones,* 2020 WL 2203839, * 6 (W.D. Ky. May 6, 2020). Accordingly, the Court will dismiss Bruin's state-law claims without prejudice.

### IV. Conclusion

For the above stated reasons, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [DN 145] is **GRANTED**. The claims against Defendants pursuant to 42 U.S.C. § 1983 are **DISMISSED WITH PREJUDICE**. The state law claims against Defendants are **DISMISSED WITHOUT PREJUDICE.** Defendants are terminated as parties.

 **IT IS SO ORDERED.**

*Thomas B. Russell*

**Thomas B. Russell, Senior Judge**
**United States District Court**

August 21, 2020

cc: Brandon R. Bruin
 240651
 Eastern Kentucky Correctional Complex
 200 Road to Justice
 West Liberty, KY 41472
 PRO SE